Good morning, Your Honors. May it please the Court? Ms. Bednarski, could I ask you to wait for just a minute because there's we want you to get settled so we don't have the problem of hearing. Go right ahead. Thank you. May it please the Court. Marilyn Bednarski on behalf of Mr. Luis Tapia. May I reserve two minutes for my rebuttal? Sure. Thank you. This is a case where there are multiple reasons for reversal individually and collectively. Reasons that combined to render this a fundamentally unfair trial. The first reason I want to address is the denial of the writ. The court's denial of the writ for the witness, who I'll call informant CHS1. There were two informants, so it's easier to refer to him as number one. Was inconsistent with Rule 17B, its requirements, and with the Sixth Amendment right to compulsory process. The standard of review here is something that's in dispute, I believe, between the parties, and that is it's abusive discretion, but it's a narrower abusive discretion standard. It's narrowed by the implications of the Sixth Amendment. The Sims case discusses that, and it's different than other circuits' application of the standard of review, so it's important to be careful there to see Ninth Circuit law on that point. Here, the defense proffer was set forth, and it is included in the appellant's Yes. I didn't fully get up to date of where we are. Are we talking about the exclusion of your client's own statements? No. I'm sorry. The exclusion of the witness that I asked for by virtue of an application for a writ to bring in the informant CHS1. Okay. But, Narski, originally the permission was granted, right? It was. And then there was a change? There was a change. It appears only because the trial date changed. The documents that I submitted in support of the request are in the excerpt of Record Volume 2. The whole volume is dedicated to that. There was briefing on the issue prior to the second decision. So whether or not the judge changed his mind for some reason, the parties raised, or just changed his mind on his own, it's impossible to tell. Right. Okay. It seems as though the discussion he had on the record on July 29th, in which he speculated about, oh, you know, it must be for the purpose of intimidation or some other reason, I don't know, is not the reason he ultimately ruled on. Because the next day there's a minute order saying it was denied for necessity and relevance, and there's no mention of some improper purpose. Is that the clerk's order? It's a minute order from the judge. The minute the judge wrote it? I'm sorry? The judge wrote it? Well, it's hard to say. I suppose he approved it. Well, the judge was. Because I don't think that. When there's an inconsistency between something that's written and something the judge says, ordinarily we require to follow what he said, unless there's some reason to do otherwise. Now, the judge clearly was concerned about bringing this person in without any greater showing than it was made and determined for himself that he was trying, that your client was trying to influence him so he would testify differently because he'd be afraid. And there was no basis for that? There was a basis for it was the entire court record that he was being tried for. And if you're sitting there as a district judge, you've got a responsibility to make on that issue. Now, you feel that he was wrong. There was a clearly erroneous determination that he made, and yet there is a fact for it by the very basis of your client, what your client was being tried for, and what the judge knew about the record of the defendant who was before him. Why is that clearly erroneous? Okay. I would say two things. I would say the judge on the 29th, when we had the hearing, didn't rule. He said in that hearing that he was going to take another look at things, and, in fact, the next day the minute order issued. The reason why I think it's his minute order and not the clerk's is because in that minute order, he rules on all the pending motions. That's not something a clerk could do. So in ruling on this pending motion, he says, and this is excerpt of record at page 67, Docket Entry 231, the writ of habeas corpus ad testificandum regarding Salvador Suriel Carrillo is denied on the basis of an inadequate showing of necessity or relevance. The day before, when the argument was being had between the parties, it's clear from that transcript that the court isn't ruling. When he mentions the thing about intimidating or some other improper purpose, this is excerpt of record, page 80. At the bottom of the page, he says, As I sit here right now, I don't see the purpose of it other than maybe to intimidate or send some message. I don't know. The government then says they're moving to quash. The court then says it'll take another look. This is page 81, lines 5 to 6, and then subsequently the minute order issues. The reason why I think that it's also unsupported by the record, even if we looked at that as a finding or a ruling, is that there's no evidence connecting anything my client did with respect to some effort to intimidate or anything else. The informant had been placed in protective custody and had been there for a long time. He was in a jail north of Los Angeles about an hour in Ventura. My client was in a complete other jail in MDCLA Los Angeles. There was no evidence whatsoever of communication. Other than the general idea that an informant would have some fears, I think maybe like any witness would who was testifying against someone, there could be some general reason, but there's nothing specific. The client had connections proven with the Mexican mafia, which it seems to be seeping into all prisons. I can see why the CO would not want to be before him in any way. Well, I would say it's speculation. I don't think that the court ruled that way, and the next day when he issued his actual written ruling, it said nothing about that and didn't refer to that in any way. Could you turn to relevance and necessity? Yes. Let's assume that was the basis for denial. Why was that an abuse of discretion? Okay. As we set forth in the proffer and have argued in our briefs, there are at least four reasons why this informant's testimony was relevant. One is that it was he that supervised and was close with and connected with several of the people on the list of alleged supervisees. The government, of course, took the position at trial that it was Mr. Tapia that supervised these people. The evidence that the informant supervised them would have undercut their theory in that respect, and even if I couldn't prove to the jury that he supervised them. I thought the one person that this confidential informant was going to most persuasively testify that he supervises, the one that the jury ultimately found, was not one of your client's supervisees. I think there are several people. I think that person would have been a really important piece of evidence for me because if the jury had disbelieved him with respect to Roger Armendariz, the man who would refer to the informant as chief, who was always with him, who would follow him around, who even in the recordings would talk about him in chief, and who Mr. Tapia talked with the second informant about, Armendariz is with him. I think it would have been really important. And if they disbelieved him as to him, the jury could have drawn an inference about disbelieving him as to other supervisees. But there was more. There was also evidence that Mr. Salazar, another person on the list, was actually crime partners with the informant during the investigation as well as very closely afterwards. In other words, he and the informant were arrested just a few months after the arrest of Mr. Tapia with guns going into some place, holding people up and extorting them. Okay, but why does that preclude your client from having supervised this other person? I guess I don't see the... Well, I think that it should have been up to the jury to decide whether or not the government's position wasn't that they shared supervision of these people. The government's supervision was that Mr. Tapia supervised and directed these people and basically controlled the Ventura County area and controlled it by virtue of the power he was given from the Mexican mafia. One of the other reasons why I wanted to present this witness was that he also would have talked about the beach meeting. The government made much of the beach meeting. This was a meeting that they took the position at trial Mr. Tapia had created and was a meeting at which they said that he was directing the younger people of the gang essentially to do his bidding by virtue of the power of the Mexican mafia. And it's all on tape, right? That was recorded. Right, and your client was pretty much the only one to speak at that meeting, right? He was... Basically, the informant introduces him, introduces the young gang members to him, and essentially then sort of hands it over to Mr. Tapia, who's in the center of these people. So it was a reasonable inference to draw that he was doing all the talking. Okay, and the informant would have said what if had you called him? The informant would have said that he was the one who knew these younger gang members. Tapia didn't. He had to introduce them. That he was the one who organized and got them there. That he was the one who directed Mr. Armendariz, his right hand, the guy who calls him chief, to go around town and pick them all up and get them there. We have bits of corroborating evidence, so we know this is true. We know that there was a mobile home, and that mobile home belongs to the informant, and that was seen in surveillance photos. But what I couldn't get is I couldn't get the agents to identify the driver as Mr. Armendariz, who was his right hand. The informant would have been able to do that. The informant would have been able to say that he instructed his right hand to go around and pick everybody up. Counsel, so I have this struggle with the same question Judge Watford has. How does that, I think you want us to imagine a vertical hierarchy. How does that vertical hierarchy preclude your client's involvement as a supervisor? I don't know that it would preclude it, but I think it would have given me a basis on which to argue that Mr. Tapia didn't have the total control of this area, which was the government's theory. So is it your argument that since this was, your request was denied on the basis of relevance, that, in fact, this evidence that you've just described to us would make it more likely? Yes. That your client's theory was plausible? It would have given me a basis on which then to ask to draw the inference that what he was doing in that gathering was giving advice as an older person, but not directing them. Relevant. This evidence you wanted wasn't irrelevant. That's what you're really coming home to. It is. I mean, I think that in a trial, you have to have the ability to tell your story and link it to the evidence. And if you're only left with weak inferences, then they're weak arguments. I think he also could have testified that he supplied Mr. Tapia with many of the firearms. It clearly would have been improper for him to have held firearms, stockpiled firearms, given them to Mr. Tapia. I believe by giving him those firearms, he was promoting this gun business. We know that the indictment charges Mr. Tapia with essentially operating a firearms enterprise. And clearly, if the informant was promoting that and helping to generate that and helping to make it look as if Mr. Tapia had ready access to more weapons, that would have been a nice fact for me to be able to argue to the jury, not just to support the possibility of outrageous government conduct, but also to undercut the government's theory that he had these vast resources and ready access and was very knowledgeable about firearms. Finally, the opportunity to have the informant there to testify about his own separate activities, drug activities. We know he was caught with a large quantity of dope in February of 2011. We know that he was working with Mr. Salazar. We know that he was running around town with guns, acting like a thug, holding people up. So this concept that the government presented that I really couldn't rebut, that Mr. Tapia sort of controlled the gang activity in the area by virtue of this authority from the Mexican mafia, is undercut by evidence that this informant is acting separately, on his own, doing drugs and guns activity. Do you want to save some time? I do. I didn't get to my expert issue. I guess I'll do that later. Thank you. Elton? Good morning, Your Honors. May it please the Court, Cameron Schroeder on behalf of the United States. With me is my colleague, AUSA Mack Jenkins. We were both trial counsel in this matter. With the Court's permission, I would like to address the issues relating to the writ and the defendant's statements. To this extent, the Court would like to hear on those issues. And Mr. Jenkins would like to address the issues relating to experts, which I understand Ms. Bednarski will address in her reply or her rebuttal. So I would like to give Mr. Jenkins a few minutes to address those. Well, the time's ticking. However you want to use your time is just fine. Great. So just watch. Then, may it please the Court, I would like to address what I think counsel has focused on in her opening argument regarding this issue of the writ. And I think there's a couple— Why did you oppose the issuance of the writ? There were a few issues, Your Honor. I think the main issue is that we are, as I think Judge Wallace focused on, talking about an informant who made recordings of the defendant at the direction of the FBI in a long-term investigation. He was a member of the defendant's gang. The defendant was a validated member of—I'm sorry, associate of the Mexican Mafia and a leader of the street gang. The defendant, in recordings that were introduced at trial, talked about how they deal with informants. He talked about assaulting informants and killing informants. There was every reason to think that if this informant was brought before this court, there was going to be a safety issue. And that was what the district judge did allude to in his statements on the record, that he didn't understand why this person was being brought unless it was for the purposes of intimidation or some other— and he sort of left the sentence hang. But can you back up a step? Because originally permission had been given to bring this witness. And so what changed? It seems like this hierarchy that you're describing was certainly in place and well-known. It was in the indictment from the beginning. So what was different? I think the court has an interesting point, just as the way the timing unfolded on this. The writ was filed and granted almost immediately. I don't think it was considered. And then the trial date moved. The government filed an opposition to the writ at that point, raised the issue to the district judge. There was briefing on it at that point, although the factual information as to why counsel wanted to bring that informant over was not provided to the government. So we were arguing a little bit in the dark, not knowing what the reasons were. But the court found when it actually— no reasons were provided the first time around. There is a requirement under Rule 17b that embodies the Sixth Amendment standard that the defendant has to make a showing that the witness is necessary to an adequate defense. And when the defendant actually put forward information to try to meet that standard, the court said, you didn't do it. I find that you did not meet that standard. And that is what all the circuits that have addressed this have agreed is required. I guess I am puzzled by your response to my question as to why you opposed it. You start with the safety concern, and I don't see how bringing the witness to the courtroom to testify in any way aggravates the safety concern. If they want to put a hit out on the guy, they can find him. That's not a problem, as you know. So the safety thing just seems to have nothing to do with it. You were about to get to what I think is relevant, which is has he made the showing under Rule 17. I think there are two issues there, Your Honor. One is has the defendant made the showing, and two is the court entitled to make a balancing assessment, even if the defendant makes a showing. And I think the court did both here. But the safety concern then is that he's wanting the writ issued solely on a pretext to improve the chances of targeting the person? I don't want to speculate as to why the defendant wanted the writ issued. The issue is really just was the testimony relevant and necessary to make out the defense. So that's why. Why don't you just go there? Because this whole thing about the safety issue struck me as a distraction. Well, I'm going to leave it on the table, Your Honor. I think the court did use it as the basis for part of its decision, and I think that it's ruling. And that goes into the question. I want to focus on the rule. Excellent, Your Honor. So the court specifically said, you know, I find that there has been an inadequate showing on this matter. And I think there's two issues there. One, has the defense, you know, made a satisfactory showing, which is the terms that is set forth in the case law? And two, sort of not to be cute about it, has he made a showing? And I think there's actually kind of two parts there. One, even if what he says is true, does it matter? Well, it did as to the one supervisee, right? You guys alleged that Mr. Tapia was a supervisor of this one person, and they said a witness who would directly refute that. And so how is that not relevant? I mean, relevance is a pretty low bar. Necessity, I don't know where else they were supposed to get that testimony from. So why isn't just on that point alone? I think there are two issues there, Your Honor. One is that was obviously not the only person who could testify about that because the person she was talking about, Mr. Armendariz, could also have been called to talk about that point. So this witness's testimony wasn't necessary. I don't think it directly contradicts anything the government said. There was no argument made at trial that Mr. Tapia, the defendant, was the exclusive leader. As I think Your Honor pointed out, that was not inconsistent with the case presented by the government. It didn't constitute a defense to the charges that were actually brought. Mr. Tapia, the defendant, had leaders above him. He had people he talked about as being at the same level as him. He talked about the hierarchy of this gang in many of his recorded interactions. Yes, the CHS was part of it. Mr. Armendariz was part of it. Mr. Salazar was part of it. A lot of other people were part of it. The jury only had to find that five people were supervised by this defendant to meet the standards required by the CCE charge that the government brought, the continuing criminal enterprise charge. And they named five people at defendant's request. None of them were Mr. Armendariz or Mr. Salazar or anyone else that she's currently objecting to not having had the CHS there to testify about. They named five other people that were unaddressed by the CHS. So there can be no error there. That doesn't speak to relevance before the trial starts. You guys alleged more than those five in the indictment. Correct, Your Honor. And I think that's the other point that is really important in this jurisprudence, and I think there is some confusion in the case law. We'd actually welcome some clarification from the court because I think that this standard has gotten a little bit conflated. The requirement in the rule is that defense show, meet a burden, that the witness was necessary to an adequate defense. And then there's kind of a standard that says, well, and if he shows that it's relevant, that's probably enough. That relevant standard goes back to a prior version of the rule that the D.C. Circuit provided that language on, and they were analyzing whether the kind of information that the defendant presented was sufficient. And then it gets picked up and sort of translated through the Fifth and Sixth Circuits, gets to the Ninth Circuit, but it is clearly inconsistent with the way the courts have actually analyzed this issue when presented with them. And they say, yes, relevance, but then they go on to analyze, was it material? Was it necessary? Did it go to a defense? And none of those standards were met here. It can't be a bare relevance standard, or there is no finality. Anytime a 17B subpoena is denied, or even more significantly, a writ is denied, the defendant can come before you and say, it was relevant to some issue in this trial, therefore I should get a new trial. And that simply cannot be the case. The number of people who have relevant information about a Mexican Mafia-related gang case in Southern California is enormous. And the fact that this witness may have had some relevant information is not sufficient to show that he was necessary to an adequate defense, nor that the defendant made that showing to the district court at the time as he was required to do. His arguments have changed on appeal, and so we really have to look at what the court was presented with, and it was not presented with sufficient information. With the Court's permission, I'd like to save some time for my counsel. Sure. May it please the Court. Mack Jenkins on behalf of the United States. I will be brief, and I, as my colleague pointed out, just deal specifically with the admission of expert testimony as to gang evidence. Here we have essentially two gangs, Colonia Chicas, of which the defendant was a leader, and then the Mexican Mafia in that vertical hierarchy, which he was a validated associate, which essentially gave him a higher status than most, a lower status than a member. And for four reasons, we think the court did not abuse its discretion. First, And you're going to defend, I assume, the amount of expert testimony that came in? Because I don't think it would be hard to contest that there was a need for at least some general, you know, establishing a framework. But am I remembering that two of the nine days of trial were taken up with expert testimony? It was actually less than one day that carried over into two days. And that's one of our points. Ms. Bednarski points out that it says it was more than two days. We went through the actual testimony, and it was less than one day stretched over two days. The predominant amount of that time was this gang video, which the court pointed out earlier, was defendant holding court for around 20 minutes talking about the Mexican Mafia, his leadership, drug trafficking, killing informants, during which we would stop and ask the gang expert when he says vario, when he's saying that this big organization can dismantle the vario, what does that mean? So there was that type of testimony that extended it, but it was really just focusing on the what defendant said and then the background of the Mexican Mafia. Our Mexican Mafia expert testified for a very brief amount of time, and I would submit he gave one of the most, I've tried Mexican Mafia cases before, this expert gave the most watered-down version of the Mexican Mafia, the most PG version that I've seen in a trial, because all he talked about was Mexican Mafia controls the prison. They do it through extortion. They also have their reaches into Southern California's Sereno gangs, which give those gang members outside of prison juice or status. It gives them resources. It gives them personnel. He didn't talk about the brutal murders. He didn't talk about how many, to be in the Mexican Mafia, you have to kill one of your own or kill an informant. There is, in contrast to Echavarria, which is relied on by the defense, which talks about bribery, torture, murder. That had nothing at all to do with the case. That individual was not even a member of that cartel. He didn't even deal with that cartel specifically. Here we did seek to narrowly tailor it, as we told the court over and over, narrowly tailor it to the evidence that was presented and the words of the defendant himself. So the extent that the evidence, I again think it was brief, was extensive, it was because every time the defendant said something about Colonia Chicas or his people or that he's in this organization that stretches back to the federal penitentiary, we did have to explain that to the jury and as well explain why that mattered because there's two portions of the analysis. Okay, so he's in the Mexican Mafia. We've proved that, but what does that matter to our case? What does it matter to a continuing criminal enterprise? And frankly, to the government and I think to the defense, that's all this trial was really about, whether the defendant led a continuing criminal enterprise, but not only that, whether he led five more people and whether it had significant resources and whether it had over 1,000 actual grams of methamphetamine. To us, that was crucial to show that this wasn't just a guy believing in a dream deal who had some friends, who had some guns, who had some drugs. This was essential of Ventura County Kingpin and when he says, I have drugs, I can go to Mexico, I can get you guns, I can get you caches of guns, I do $100,000 a week, when he says those things, we had to show that he was speaking the truth precisely because the defense argument was that he was boasting, that he was bragging, he was trying to impress. But in order for us to satisfy the CCE and the elevated elements that brought an increased punishment, we needed to show that who the defendant was, was exactly who he says he was. And that's all the expert explained. The background that showed the foundation of the power, his source of resources and the structure, and then when defendants said things and people listened to them, it's because he exactly was who they said he was. And so we did seek to limit it and circumscribe it. And, of course, I also mentioned that we did, at defense's request, we didn't object. There was a limited instruction, limited to leadership. In closing argument, I did the closing argument, I said, remember, jury, there is a limited instruction about this gang evidence. You're only to consider it based off leadership. We don't want you to consider and you can't consider that because the defendant's a member of the gang, even the Mexican mafia, therefore he's guilty of any crime at all. And we ask that you not do that. So there was this limited instruction. The court carefully crafted it at defense's request. We honored it, we highlighted it, and we argued consistently with it. If the court has any further questions or does not, I will say it. Thank you.  Could you put two minutes on the clock, please? The quality of the evidence, the expert evidence, was so prejudicial. The government likes to characterize it as brief. I put all the citations, well, not all the citations, but I put many of the citations in the brief about just how inflammatory it was. It was about how high these security threats are. It was about how the prison gangs control all of Southern California. It's about how people would commit violent acts to do that, that they had to commit violent acts to do that. There were specific references by four people, not just the two experts, but two other case agents. There were only, I think, nine witnesses in the trial. They were all law enforcement officers. There wasn't a single lay witness in this case. But can I ask, do you contest their need to put on some expert testimony to support the CCE charge? I do, and the reason I do is because I think the case should have been tried on the transactions. There was recorded audio evidence about the transactions which were charged in the case. But, counsel, they get to come up with their theory, and they've got this video, the beach video alone. At a minimum, don't they have to translate part of it for the jury? Well, I think that if there was any relevance to the argument that he is more likely to be a leader because he's given this leadership role by the Mexican mafia, which is their primary argument, that's diminished by the fact that there's really no connection to any of the transactions. There's no evidence, for instance, in this case, that any monies derived from any of this was paid up to the Mexican mafia. There's no evidence that any Mexican mafia member blessed, knew about, spoke about, participated in any of these transactions. There was surveillance all around Mr. Tapia. There's never any surveillance that would indicate that he would meet with anybody in the Mexican mafia before or after. There were wiretaps. There's no evidence of any conversations between Mexican mafia members or associates and him before or after in relating to these transactions. That diminishes the value because it diminishes any connection to the Mexican mafia. In addition, they called no lay witnesses to testify that they followed him, were led by him, or were organized by him as a result of his status in the Mexican mafia or by virtue of his power in the Mexican mafia, which is the government's theory, that people would be more likely to follow him because of this status and power he had, yet there's no evidence whatsoever that anybody did so. The government didn't even present their informant to say that. They clearly have access to that person and could bring him in, don't even have to ask the judge's permission. Getting back to that question because I know I'm out of time, I want to tell you on the expert issues, my best cases are Roark and Echeverria. On the writ question, I satisfied my obligation. The government did not. They have an obligation under the rules to show that my averments and my proffer are untrue. They didn't do that. For those reasons, the writ should have been granted. I should have had that witness. The testimony of the experts should, at a minimum, have been, if not extremely limited, struck altogether. One idea I have for you is, although I think reversal is appropriate because of the collective prejudice from the errors, there is another remedy that's talked about in the Cruz Jimenez case, which is a writ case. And they talked about this difference between when one side or the other, they have different positions about what a witness would say, and they remand it to the trial court to have a hearing, like let's hear what that witness would have to say. If the witness says what Bednarski says the witness would say, it should be a new trial. If the witness says what the government says, case is affirmed. Thank you. Thank you very much. Thank you all. We'll go on to the next case on the calendar.
judges: Wallace, Christen, Watford